75 N.J. Super. 68 (1962)
182 A.2d 164
THE HANOVER INSURANCE COMPANY, A CORPORATION, AND THE TOWNSHIP OF DELAWARE, A MUNICIPAL CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
JACK N. FRANKE AND ROSE FRANKE, HIS WIFE, JAMES A. BUTLER, DEFENDANTS, AND MARTIN ROTH AND RAE ROTH, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1962.
Decided June 6, 1962.
*69 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Milford J. Meyer (of the Pennsylvania Bar) argued the cause for appellants pro hac vice (Mr. Thomas W. Rauffenbart, attorney; Messrs. Meyer, Lasch, Hankin & Poul, of the Pennsylvania Bar, of counsel).
Mr. Michael Patrick King argued the cause for respondents (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
*70 The opinion of the court was delivered by FOLEY, J.A.D.
The question before us concerns the coverage provided by the omnibus clause of an automobile liability insurance policy issued by the plaintiff insurance company to the Township of Delaware (now Cherry Hill Township).
The essential facts are not in dispute. Defendant James A. Butler was regularly employed by the township as a bulldozer operator. For a considerable period of time prior to May 20, 1960 it had been the practice of Samuel R. McGill, the Superintendent of Public Works of the township, to designate one or more employees to serve in a standby capacity over week ends for the purpose of responding to emergencies which might arise from happenings such as the cave-in of roads, sewer stoppages, accidents affecting the use of highways, and the like.
On Friday May 20, Butler was selected to act in this capacity until the commencement of his regular work week on Monday morning May 23. Butler's automobile was under repair at a local garage at the time. He informed McGill of this. McGill said:
"Well, all you've got to do, if the police call you, or if I call you, or if any body calls you on emergency, you must get over here, so, you better take a pickup home with you, and you'll have transportation to get back to the Town Hall and also go on an emergency call."
Concededly, McGill gave Butler no instructions as to whether or not he was privileged to use the vehicle for his personal purposes over the week end.
Valentine J. Genzano, a foreman employed in the department of public works, testified that it was the policy of the municipality that township trucks were not to be used on the personal business of employees, nor driven outside the boundaries of the municipality; that McGill had discussed this with him and with other subordinates "a few times"; and that he (Genzano) also had spoken of it to employees who served under him. Joseph Esposito, also a foreman, testified in similar vein. It is significant that *71 neither foreman specifically testified that he had given Butler this information.
In a deposition Butler testified that he had served as an emergency man on previous occasions but was given no instructions by McGill with reference to the use of the truck. He deposed also that while he was on call "around the clock" he was not expected to remain at his home constantly over the week end as long as he could be readily reached if an emergency should occur. This interpretation of his employment obligations is not disputed and seems highly reasonable in view of the fact that employees assigned to these week-end duties received compensation only when emergencies actually arose which required them to perform services for the township.
Admittedly, the rule, regulation, or policy relating to the personal use of the township automotive equipment by employees on emergency, or other duty, was at no time reduced to writing, and there was no evidence whatever from which it could be legitimately inferred that it had been orally communicated to Butler, or that he had knowledge of it from any source.
On Sunday night May 22, at about 9:00 P.M., Butler, while driving the township truck, came into collision with a vehicle operated by defendant Jack N. Franke, in which the defendants Rose Franke, Martin Roth and Rae Roth were passengers. The accident happened in the Township of Delaware as Butler was returning to his home after a visit with his mother.
Subsequently, the Roths instituted an action against Butler, the Township, and Franke, to recover damages for personal injuries, and Franke and his wife instituted a similar action against Butler and the Township. Thereupon, the present suit for a declaratory judgment was commenced by plaintiff in which it sought a judicial declaration that "it was not obligated to defend and indemnify James A. Butler individually in the several actions now pending against him."
*72 The trial court held on the facts herein recited that the permission granted Butler by the township for the use of the truck did not embrace his using the vehicle for the purpose of visiting his mother, and, consequently, that the omnibus coverage contained in the insurance policy did not obligate the company to provide him either with a defense to the pending actions or to pay judgments against him which may result therefrom. Defendants Roth appeal.
The trial court noted the recent case of Matits v. Nationwide Insurance Co., 33 N.J. 488 (1960), in which the Supreme Court for the first time explicitly adopted the "original permission" rule in the construction of the standard omnibus clause provisions contained in automobile liability insurance policies, of which the clause in question is typical:
"THE HANOVER INSURANCE COMPANY ...
Agrees with the insured * * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * arising out of the * * * use of the automobile.
* * * the company shall: (a) defend any suit against the insured * * *
* * * the unqualified word `insured' includes the named insured and * * * also includes any person while using the automobile * * * provided the actual use of the automobile is by the named insured or such spouse or with the permission of either * * *
* * * the word `automobile' means * * * the motor vehicle or trailer described in this policy * * *."
In Matits the Supreme Court, in rejecting as the law of this State the "minor deviation" rule advanced by the Appellate Division in the same case (see Matits v. Nationwide Insurance Co., 59 N.J. Super. 373 (App. Div. 1960)), or the alternative "conversion" rule (see 7 Appleman, Insurance, 169-181 (1942)), held:
"* * * if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy."
*73 Nevertheless, the trial court concluded that the cases relied upon by plaintiff, Penza v. The Century Indemnity Co., 119 N.J.L. 446 (E. & A. 1937), and Nicholas v. Independence Indemnity Co., 11 N.J. Misc. 344, 165 A. 868 (Sup. Ct. 1933), were controlling of the case at bar, and required a finding that Butler was not within the omnibus coverage. Undergirding the trial court's reasoning appears to have been the idea that the Matits case impliedly approved the holdings in Penza and Nicholas, and an argument to the same effect is projected by appellant on this appeal. We cannot so conclude.
In Matits the court said on this subject:
"Our holding is not contrary to Nicholas v. Independence Indemnity Co., 11 N.J. Misc. 344 (Sup. Ct. 1933); Penza v. Century Indemnity Co., 119 N.J.L. 446 (E. & A. 1938) and Baesler v. Globe Indemnity Co., 33 N.J. 148 (1960). Without expressing approval or disapproval of Nicholas and Penza, it is sufficient to say that these cases are entirely inapposite to the question here presented. Neither involved a deviation from a permitted use. Both had to do with a retaking of an automobile after permission to use it had expired  a retaking which the court in Penza characterized as unlawful. In both cases the court found that there was no permission to use the automobile in the first instance. Indeed, the court in Penza took pains to emphasize this fact as a ground for distinguishing the case from Rikowski. It said: `We do not regard this as a case involving an initial permission to use an automobile and a "slight," or any other kind of deviation therefrom.' Penza, supra, 119 N.J.L., at p. 451. The court went on to say that if the driver had deviated from a permitted use there might well have been coverage under Rikowski." 33 N.J., at p. 497.
We interpret this passage as meaning that (1) Penza and Nicholas were factually inapposite to Matits, and (2) the court reserved for re-examination the validity of the holdings in Penza and Nicholas in light of the approach of liberal construction espoused by Matits, when cases factually similar to Penza and Nicholas should be presented to the court.
On our view of the present case we find it distinguishable from both Penza and Nicholas, and would so conclude even *74 if those cases be held to represent the law of this State at the present time. Assuming, but not deciding, that an interruption in a permitted use terminates such use, and thereby causes a subsequent nonpermitted use to fall without the ambit of the original permission rule as laid down in Matits, and assuming, but again not deciding, that such was the situation in Penza and Nicholas, we do not find here present the elements of termination of permitted use and "retaking" which were made the bases of the decisions in those cases.
Traditionally, our courts have said that rules of law are not applied in the abstract but must be considered in light of the facts in individual cases. This case offers no exception to that principle. Here, there was placed at Butler's disposal, by one authorized to grant it, the use of the township's truck for purposes which would be of significant benefit to his employer. No strings were expressly placed upon such use, and so it must be assumed that the use thereby permitted was any which would reasonably serve the stated objectives of the employer. Thus, the scope of the use of the vehicle must be equated to the duties Butler was required to perform. These duties necessitated his being on call night and day, from Friday night until Monday morning, to respond to emergencies. As already observed, his recompense depended entirely upon the need for his services for emergent purposes, and so it was not, and could not be, expected that he could not make personal use of his leisure week-end time providing his availability for service was not diminished. It was also known to his employer that Butler's personal automobile was unavailable to him, and so if an emergency occurred, transportation to the scene would require the immediate use of the township truck. In this complex of circumstances defendant's truck became an indispensable tool to be used by Butler if the occasion arose, and we find it wholly unreasonable to infer that Butler's temporary use of the truck for his personal purposes was discordant with the undefined boundaries of the *75 use to which it might be put in the service of his master. In short, as distinguished from Penza and Nicholas, if such distinction be necessary, we conclude that the use of the truck by Butler at the time of the accident, when measured by the exigencies of his commitment to his employer, and the role the truck played in the discharge of his duties, was not in any sense an interruption of or departure from a use demanded by the duties cast upon him by the employer.
In any event, we hold the case to be controlled by Matits since if it be held that Butler's use of the vehicle to visit his mother was contrary to the permission granted to him in the circumstances, such use may not be said to have been the equivalent of "theft or the like," particularly under the rule of liberal construction in favor of coverage for which Matits and subsequent cases stand. Cf. Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507 (1960); Allstate Ins. Co. v. Fidelity & Cas. Co. of N.Y., 73 N.J. Super. 407 (App. Div. 1962); Standard Accident Ins. Co. v. Allstate Ins. Co., 72 N.J. Super. 402 (App. Div. 1962).
Accordingly, the judgment is reversed with direction that judgment be entered in favor of defendants, declaring that plaintiff be adjudged to be obligated to furnish a defense to Butler in the negligence cases presently pending, and to pay any judgments returned against him in such actions, which are within the policy limits of the insurance contract.